|   |   |   |
|---|---|---|
| 1 | UNITED STATES DISTRICT COURT | |
| 2 | DISTRICT OF NEVADA | |

| Commonwealth Land Title Insurance Company, | 2:14-cv-01394-JAD |
|---|---|
| Appellant | **Order Reversing Bankruptcy Court Decision** |
| v. | |
| The Creditor Group, | |
| Appellee | |

Appellant Commonwealth Land Title Insurance Company files this appeal seeking reversal of the bankruptcy court's 2014 order sustaining appellee The Creditor Group's objection to Commonwealth's bankruptcy claim against R&S St. Rose Lenders, LLC (Lenders). The bankruptcy court determined that Commonwealth's claim was barred by the doctrine of claim preclusion as the result of a related state-court action, and Commonwealth appealed. Because no res judicata defense applies to Commonwealth's claims, I reverse that decision.

**Background**

In 2005, two companies, Lenders and R&S Rose, LLC (R&S), were formed by Saiid Forouzan Rad and R. Phillip Nourafchan (the owners) to facilitate the purchase of 38 acres of real property in Henderson, Nevada.[1] R&S was formed to enter into a land-banking arrangement with developer Centex Homes. Lenders was formed to borrow funds from individual lenders and then loan those funds to R&S to buy the property.

To finance the property, R&S obtained an approximately $29 million loan from Colonial Bank, which was secured by a first-position deed of trust against the property. Soon after, the owners signed a promissory note in favor of Lenders, secured by a second-position deed of trust. In 2007, the owners sought a new loan from Colonial for another $43 million when Centex

---

[1] ECF No. 10 at 5; ECF No. 16 at 7-8; state-court order, ECF No. 11 at 59; *R&S Lenders, LLC v. Branch Banking and Trust Co*, 2013 WL 3357064 (Nev. 2013) (unpublished) (Supreme Court of Nevada's order affirming state-court order).

unexpectedly backed out of the sale. The new loan would be used to pay off Colonial's first loan and improve the property for future sale. However, due to Lender's 2005 deed of trust, the owners did not meet Colonial's equity requirement to qualify for the loan. To qualify, the owners allegedly made several representations that they would subordinate or reconvey their second-position deed, putting Colonial's deed of trust for the 2007 loan in first position. Purportedly in reliance on these representations, Colonial approved the new loan. Commonwealth, allegedly relying on the same representations, issued a title policy with Colonial as the beneficiary, insuring what was believed to be a first-position deed of trust. The owners, however, never reconveyed the Lenders deed of trust, so the 2007 Colonial deed of trust was not placed in first position.

In 2009, Colonial filed a state-court action against Lenders alleging that its 2007 deed of trust had priority over the owners' 2005 deed.[2] Soon afterward, Colonial was placed in receivership by the Federal Deposit Insurance Corporation (FDIC) and Branch Banking & Trust Company (BB&T) purchased Colonial's assets. BB&T then filed an amended complaint in the state-court action as Colonial's successor-in-interest, alleging six causes of action: (1) declaratory relief - contractual subrogation; (2) declaratory relief/quiet title - replacement; (3) equitable/promissory estoppel; (4) unjust enrichment; (5) fraudulent misrepresentation; and (6) civil conspiracy.[3] In 2010, after a bench trial on the issue, the state court granted judgment in favor of Lenders on BB&T's first four claims, holding that "BB&T failed to meet[] its burden of proof to establish that the Colonial Bank loan, note[,] and deed of trust at issue in this case were ever assigned to BB&T."[4] The state court also included several "findings of fact," indicating that the court believed that no fraudulent misrepresentations were made to Colonial.[5] BB&T

---

[2] That action was consolidated with a separate state-court action brought by investors who loaned money to Lenders. *See* state-court order, ECF No. 11 at 55.

[3] *Id.*

[4] *Id.* at 58.

[5] Bankruptcy-court order, ECF No. 1 at 13-16.

then voluntarily dismissed without prejudice its fraudulent misrepresentation and civil-conspiracy claims.[6]

The Supreme Court of Nevada affirmed the judgment in 2013, concluding that the lower court's "decision was not clearly erroneous because BB&T failed to carry its evidentiary burden to prove its ownership of the [2007] loan,"[7] and it denied a request for en banc reconsideration in 2014.[8]

While BB&T was appealing the state-court action, Lenders and R&S filed separate Chapter 11 bankruptcy proceedings.[9] BB&T filed a proof of claim in Lenders' proceeding in an unsecured amount of approximately $38 million for the fraudulent-misrepresentation and civil-conspiracy claims that BB&T had voluntarily dismissed from the state-court action.[10] The Creditor Group filed objections to BB&T's claim. The bankruptcy court issued an order disallowing BB&T's claim under the doctrine of issue preclusion based on the judgment entered against it in state court. That order was reversed by the District Court of Nevada in 2015 after it found that the misrepresentation and civil-conspiracy claims were not actually and necessarily litigated by the state court.[11]

Commonwealth also filed a proof of claim in the unsecured amount of approximately $43 million for fraud, misrepresentation, and negligence, based on same representations made to Colonial. Commonwealth contends that those misrepresentations induced it to issue the title policy, and that its fraud and misrepresentation claims are independent from similar claims raised and voluntarily dismissed by BB&T in the state-court action. Again, the Creditor Group

---

[6] *BB&T v. Creditor Group*, 2015 WL 1470692, at *2.

[7] *Lenders v. BB&T,* 2013 WL 3357064, at *3 (Nev. May 31, 2013).

[8] *Lenders v. BB&T*, No. 56640 (order denying en banc reconsideration) (Nev. Feb. 21, 2014).

[9] Bankruptcy-court order, ECF No. 1 at 4.

[10] *BB&T v. Creditor Group* 2015 WL 1470692 (D. Nev. Mar. 30, 2015).

[11] *Id.*

objected, arguing that the claims were precluded. The bankruptcy court sustained the Creditor Group's objection, finding that Commonwealth is in privity with BB&T, and the doctrine of claim preclusion barred its claim by virtue of BB&T's involvement in the state-court action. Commonwealth appeals that determination here.

**Discussion**

**A. Standard of review**

I review the bankruptcy court's decision for abuse of discretion and apply a two-part test.[12] I consider de novo whether the court applied the correct legal standard.[13] I review "the determination of whether issue or claim preclusion applies de novo as mixed questions of law and fact in which legal questions predominate."[14] But I review the bankruptcy court's findings of fact for clear error.[15] A fact finding is only clearly erroneous "if it was without adequate evidentiary support or was induced by an erroneous view of the law."[16] I "may not simply substitute [my] view" for that of the bankruptcy court.[17] Finally, I may affirm on any basis supported by the record.[18]

**B. Issues presented on appeal**

Commonwealth raises four issues on appeal. It argues that the bankruptcy court erred in (1) sustaining the objection to its claim; (2) applying res judicata in connection with sustaining the objection; (3) finding that the claim was based on the same claims that were or could have

---

[12] *Leavitt v. Soto*, 171 F.3d 1219, 1223 (9th Cir. 1999).

[13] *Id.*

[14] *In re Cogliano*, 355 B.R. 792, 800 (B.A.P. 9th Cir. 2006); *see also Robi v. Five Platters, Inc.*, 838 F.2d 318, 321 (9th Cir. 1988).

[15] *Id.*

[16] *Wall St. Plaza, LLC v. JSJF Corp.*, 344 B.R. 94, 99 (B.A.P. 9th Cir. 2006).

[17] *Barrera v. W. United Ins. Co.*, 567 Fed. App'x 491, 493 (9th Cir. 2014) (*citing U.S. v. Hinkson*, 585 F.3d 1247, 1262 (9th Cir. 2009)).

[18] *Heilman v. Heilman*, 430 B.R. 213, 216 (B.A.P. 9th Cir. 2010).

been brought in the state-court action; and (4) finding that Commonwealth was in privity with the parties to the state-court action. Although the bankruptcy court relied only on the doctrine of claim preclusion to sustain the Creditor Group's objection, the Creditor Group argues that Commonwealth's claim is also barred by issue preclusion and urges me to affirm on that basis as well. The Creditor Group also argues that I can affirm because Commonwealth's fraudulent-misrepresentation claim fails as a matter of law.

**C.    Claim preclusion**

To determine whether a claim is barred by issue or claim preclusion based on a state-court ruling, I look to the laws of the state in which the prior judgment was entered.[19] Under Nevada Law, claim preclusion applies when: "(1) the parties or their privies are the same, (2) the final judgment is valid, and (3) the subsequent action is based on the same claims or any part of them that were or could have been brought in the first case."[20] A "claim" under Nevada law encompasses all claims that arise out of a single set of facts.[21]

**1.    Privity**

Commonwealth was not a party to BB&T's state-court action, so the binding effect of any judgment depends on Commonwealth being in privity with BB&T. In Nevada, "[a] privy is one who, after rendition of the judgment, has acquired an interest in the subject matter affected

---

[19] *Migra v. Warren City Sch. Dist. Bd. of Educ.*, 465 U.S. 75, 81 (1984); *White v. City of Pasadena*, 671 F.3d 918, 926 (9th Cir. 2012) ("[A] federal court must give to a state-court judgment the same preclusive effect as would be given that judgment under the law of the State in which the judgment was rendered").

[20] *Five Star Capital Corp. v. Ruby*, 194 P.3d 709, 713 (Nev. 2008).

[21] *See Holcombe v. Holcombe*, 477 F.3d 1094, 1098 (9th Cir. 2007) (citing *Firsching v. Ferrara*, 578 P.2d 321, 322 (Nev. 1978) ("[T]he facts essential to the maintenance of both suits are identical; therefore, both suits involve but one cause of action and, accordingly, the final judgment in the formal suit bars subsequent litigation involving any matter which was or might, with propriety, have been litigated therein.")).

5

by the judgment through or under one of the parties as by inheritance, succession, or purchase."[22] It has also been defined as one "who is directly interested in the subject matter, and had a right to make defense, or to control the proceeding, and to appeal from the judgment."[23] The Nevada Supreme Court recently expanded the definition of privy when it adopted the Restatement (Second) of Judgments § 41, which states: "A person who is not a party to an action but who is represented by a party is bound by and entitled to the benefits of a judgment as though he were a party."[24] "A party's representation of a nonparty is 'adequate' for preclusion purposes only if, at a minimum: (1) the interests of the nonparty and [its] representative are aligned and (2) either the party understood [itself] to be acting in a representative capacity or the original court took care to protect the interests of the nonparty."[25]

The bankruptcy court held that Commonwealth was in privity with BB&T as its insurer under the title policy. The title policy gives Commonwealth the right:

> to institute and prosecute any action or proceeding or to do any other act which in its opinion may be necessary or desirable to establish the title to the estate or interest or the lien of the insured mortgage, as insured, or to prevent the loss or damage to the insured. [Commonwealth] may take any appropriate action under the terms of this policy, whether or not it shall be liable hereunder, and shall not thereby concede liability or waive any provision of this policy. If [Commonwealth] shall exercise its right under this paragraph, it shall do so diligently.[26]

The bankruptcy court determined that the relationship outlined by this section of the policy was sufficient to show that Commonwealth had the right to intervene in the state-court action to bring

---

[22] *Paradise Palms Cmty. Ass'n v. Paradise Homes*, 505 P.2d 596, 599 (Nev. 1973) (quoting *Bernhard v. Bank of Am. Nat'l Trust & Sav. Ass'n*, 122 P.2d 892 (Cal. 1942)); *Bower v. Harrah's Laughlin Inc.*, 215 P.3d 709, 718 (Nev. 2009), *holding modified on other grounds by Garcia v. Prudential Ins. Co. of Am.*, 293 P.3d 869 (Nev. 2013).

[23] *Paradise Palms*, 505 P.2d at 598–99 (internal quotation and citations omitted).

[24] *Alcantara ex rel. Alcantara v. Wal-Mart Stores, Inc.*, 321 P.3d 912, 915–17 (Nev. 2014).

[25] *Taylor v. Sturgell*, 553 U.S. 880, 900 (2008).

[26] Title policy, ECF No. 11 at 15.

its own misrepresentation and negligence claims. But that is too expansive a reading of what the title policy allows. It permits Commonwealth to institute actions to *establish title* or prevent damage *to the insured*; it does not give Commonwealth the right to join *its own* misrepresentation claims against Lenders or the owners. The fact that Commonwealth hired and paid for BB&T's counsel in the state-court action, as permitted under a different section of the title policy,[27] does not alter this finding. Those attorneys were hired to represent BB&T's interests, not Commonwealth's.

Commonwealth's interest was also not adequately represented by BB&T in the state-court action. There is no evidence that Commonwealth authorized BB&T to act on its behalf in a fiduciary or representative capacity for Commonwealth's misrepresentation claims. BB&T's case was brought to establish priority of title over Lender's deed of trust. While Commonwealth has an interest in the subject matter of that litigation, it is distinct from Commonwealth's own interest in redressing the misrepresentations by Lenders and its owners. Indeed, BB&T's decision to voluntarily dismiss a misrepresentation claim similar to the one Commonwealth is attempting to pursue through bankruptcy proceedings demonstrates that Commonwealth and BB&T's interests were not identical. While I can imagine instances where an insurer could be in privity with its insured—like when the insurer attempts to re-litigate the priority of an insured's title in a separate action—this is not that case. Commonwealth has its own tort causes of action to bring against the owners, and those claims were not adequately pursued in BB&T's state-court action.

**2.  Final judgment**

Even if Commonwealth could be considered BB&T's privy, there was no final judgment that precludes Commonwealth from litigating its tort claims. Under Nevada law, a dismissal

---

[27] *See id.* ("Upon written request by the insured ... [Commonwealth], at its own cost and without unreasonable delay, shall provide for the defense of an insured in litigation in which any third party asserts a claim adverse to the title or interest as insured, but only as to those stated causes of action alleging a defect, lien, or encumbrance or other matter insured against by this policy.").

without prejudice does not result in a final judgment.[28] BB&T's misrepresentation claims in the state action were voluntarily dismissed without prejudice, so no final judgment was entered on those claims.

The Creditor Group argues that, because a final judgment was entered regarding the operative facts and evidence essential to the state-court action that are identical to Commonwealth's claims, then the claims are barred. The Creditor Group materially overstates those findings. While the state court did render a final judgment on some portions of BB&T's claims, none of the findings necessary to that judgment involved the alleged misrepresentations that Commonwealth relies on for its misrepresentation and negligence claims. The state court held that, because BB&T did not prove that it owned the loan at issue, it could not, as a matter of law, bring its claims for contractual subrogation, quiet title, promissory estoppel, or unjust enrichment. The Supreme Court of Nevada affirmed that judgment, finding that BB&T did not have standing to bring any claims if it did not own the loan. That holding in no way affects Commonwealth's argument that its reliance on misrepresentations made to Colonial caused damages to Commonwealth separate from BB&T's state-court claims. Thus, there was no final judgment concerning the operative facts and evidence essential to any misrepresentation or negligence causes of action.

## D.   Issue Preclusion

Nor can the doctrine of issue preclusion support the disallowance of Commonwealth's claim. In Nevada, the doctrine of issue preclusion has four elements: "(1) the issue decided in the prior litigation must be identical to the issue presented in the current action; (2) the initial ruling must have been on the merits and have become final; (3) the party against whom the judgment is asserted must have been a party or in privity with a party prior to the litigation; and

---

[28] *Five Star*, 194 P.3d at 713 n.27 ("While the requirement of a valid final judgment does not necessarily require a determination on the merits, it does not include a case that was dismissed without prejudice . . . ."); *see also Lighthouse v. Great W. Land & Castle*, 88 Nev. 55 (1972) (a dismissal without prejudice is not an adjudication on the merits); *BB&T v. Creditor Group*, 2015 WL 1470692, at *2 n.1 (noting that the Creditor Group conceded that claim preclusion did not apply to BB&T's bankruptcy claim stemming from the same state-court judgment).

(4) the issue was actually and necessarily litigated."[29] The Nevada Supreme Court has held that an issue is actually litigated when both parties participated in the action, findings of fact were established by evidence, and the issue was necessary to the judgment in the earlier suit.[30] Just as the lack of privity or a merits-based final judgment prevents claim preclusion from applying, it bars the application of issue preclusion.

The Creditor Group's argument that Commonwealth's misrepresentation claim was necessarily litigated in the state-court action was rejected by Chief Judge Navarro in *BB&T v. Creditor* Group.[31] She found that any state-court findings of fact related to the owner's representations to Colonial were not necessary to the state-court judgment, which hung on whether BB&T could show that it owned the loan at issue.[32] "Accordingly, no factual findings on the merits of the underlying claims were necessary for the state court's denial of BB&T's claims and the factual findings that were made are dicta."[33] I find Judge Navarro's assessment of the state-court findings of fact persuasive and follow it. Whether the owners misrepresented that the Lenders deed of trust would be reconveyed has not been actually or necessarily litigated by the state court, so issue preclusion is not triggered in this case.

E. **Merits of Commonwealth's claim**

Finally, the Creditor Group urges me to affirm the bankruptcy court's judgment because Commonwealth's misrepresentation claims fail as a matter of law. Under Nevada law, a claim for fraud or intentional misrepresentation requires: (1) a false representation made by the defendant; (2) knowledge or belief on the part of the defendant that the representation is false, or that he does not have a sufficient basis of information to made it; (3) an intention to induce the

---

[29] *Five Star*, 194 P.3d at 713.

[30] *See Frei ex rel. Litem v. Goodsell*, 305 P.3d 70, 72 (Nev. 2013) (citing *In re Sandoval*, 232 P.3d 422 (Nev. 2010); *Univ. of Nev. v. Tarkanian*, 879 P.2d 1180, 1191 (Nev. 1994).

[31] *BB&T v. Creditor Group*, 2015 WL 1470692, at *4.

[32] *Id.*

[33] *Id.*

9

plaintiff to act or to refrain from acting in reliance upon the misrepresentation; (4) justifiable reliance upon the representation on the part of the plaintiff in taking action or refraining from it; and (5) damage to the plaintiff from the reliance.[34] The Creditor Group contends that, because Commonwealth provided no evidence to the bankruptcy court that a fraudulent misrepresentation was made directly to Commonwealth or one of its agents, it cannot state a claim for misrepresentation under Nevada law.

Commonwealth counters with the principle of indirect reliance, which the Restatement (Second) of Torts recognizes as an alternative theory of fraudulent-misrepresentation liability:

> "The maker of a fraudulent misrepresentation is subject to liability for pecuniary loss to another who acts in justifiable reliance upon it if the misrepresentation, although not made directly to the other, is made to a third person and the maker intends or has reason to expect that its terms will be repeated or its substance communicated to the other, and that it will influence her conduct in the transaction or type of transaction involved."[35]

Commonwealth presented the bankruptcy court with evidence of alleged misrepresentations made to Colonial, which Commonwealth claims it relied on when issuing the title policy.[36] The Creditor Group provides no Nevada case that holds that a claim based on an indirect-reliance theory necessarily fails as a matter of law, so I decline to affirm the bankruptcy court's decision on this basis.

## Conclusion

Accordingly, IT IS HEREBY ORDERED that the United States Bankruptcy Court for the District of Nevada's order sustaining Creditor Group's objection to Commonwealth's

---

[34] See *J.A. Jones Const. Co. v. Lehrer McGovern Bovis, Inc.*, 89 P.3d 1009, 1018 (Nev. 2004); *Lubbe v. Barba*, 540 P.2d 115, 117 (Nev. 1975).

[35] Restatement (Second) of Torts § 533; *see also In re Zante*, 2010 WL 5477768, at *7-8 (D. Nev. Dec. 29, 2010) (recognizing that, while the Nevada Supreme Court has not addressed the issue of indirect reliance, the California Supreme Court and numerous district courts in the Ninth Circuit have approved indirect-reliance theories in misrepresentation claims).

[36] Commonwealth presented the bankruptcy court with testimony taken for the state-court action from Brenda Burns, the escrow manager for the 2007 colonial loan, recounting the allegedly fraudulent representations made by the owners. *See* ECF No. 11 at 82–94.

bankruptcy claim against debtor Lenders is **REVERSED**, and this matter is referred back to the bankruptcy court for further proceedings.

The Clerk of the Court is directed to send a copy of this Order to the U.S. Bankruptcy Court and close this case.

DATED: October 17, 2017.

_____
U.S. District Judge Jennifer A. Dorsey